IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| CAROL STEPHENSON, )<br>)<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>)<br>WYETH LLC and PFIZER INC., )<br>)<br>Defendants. )<br>) | Case No. 04-2312-CM |

**MEMORANDUM AND ORDER**

This case is a failure-to-warn products liability action. Plaintiff Carol Stephenson claims that she developed ductal carcinoma in situ ("DCIS") in her right breast as a result of taking prescription hormone therapy medications manufactured by defendants Wyeth LLC and Pfizer Inc. The case is specially set for trial as the court's No. 1 civil case on January 9, 2012. The matter is presently before the court on the following motions: (1) Defendants' Motion to Strike Plaintiff's Late Expert Designation of Drs. Randall Patten and Peter Gann (Doc. 56); (2) Plaintiff's Motion to Exclude General Causation Testimony of Defense Experts (Doc. 94); and (3) Defendants' Motion for Summary Judgment Regarding Proximate Causation (Doc. 105).

**Defendants' Motion to Strike Plaintiff's Late Expert Designation of
Drs. Randall Patten and Peter Gann (Doc. 56)**

Defendants first ask the court to strike plaintiff's designation of two expert witnesses as rebuttal witnesses: Dr. Randall Patten (a radiologist) and Dr. Peter Gann (an epidemiologist). Defendants claim that both doctors are, in actuality, case-in-chief witnesses, and should have been designated as such. Because plaintiff did not designate them as experts until April 29, 2011—well after the February

15, 2011 deadline for designating experts passed—defendants argue that plaintiff's designations were untimely. If the doctors are properly designated as rebuttal witnesses, however, then plaintiff's designations were timely; April 29 was the deadline for designating rebuttal experts.

The Federal Rules essentially define a rebuttal expert as one who presents "evidence [] intended solely to contradict or rebut evidence on the same subject matter identified by another party under Rule 26(a)(2)(B) or (C). . . ." Fed. R. Civ. P. 26(a)(2)(D)(ii); *see also Peals v. Terre Haute Police Dep't*, 535 F.3d 621, 630 (7th Cir. 2008) ("The proper function of rebuttal evidence is to contradict, impeach or defuse the impact of the evidence offered by an adverse party."). Courts will disallow the use of a rebuttal expert to introduce evidence more properly a part of a party's case-in-chief. *Cf. SIL-FLO, Inc. v. SFHC, Inc.*, 917 F.2d 1507, 1515 (10th Cir. 1990) (affirming the exclusion of proffered rebuttal evidence at trial because the evidence should have been part of plaintiff's case-in-chief). "The plaintiff who knows that the defendant means to contest an issue that is germane to the prima facie case (as distinct from an affirmative defense) must put in his evidence on the issue as part of his case in chief." *Braun v. Lorillard, Inc.*, 84 F.3d 230, 237 (7th Cir. 1996); *Baldwin Graphics Sys., Inc. v. Siebert, Inc.*, No. 03-CV-7713, 2005 WL 1300763, at *2 (N.D. Ill. Feb. 22, 2005) ("A party presents its arguments as to the issues for which it has the burden of proof in its initial reports."). A party also may not use a rebuttal expert to introduce new legal theories. *See 103 Investors I, L.P. v. Square D Co.*, 372 F.3d 1213, 1218 (10th Cir. 2004) (noting that rebuttal report did not add a new theory).

If the doctors are not proper rebuttal experts, then the court must strike their opinions unless plaintiff shows that the Rule 26(a) violation is substantially justified or harmless. Fed. R. Civ. P. 37(c)(1). When determining whether an untimely disclosure is substantially justified or harmless, the court considers four factors: (1) the prejudice or surprise to the party against whom the testimony is

offered; (2) the ability of the party to cure the prejudice; (3) the extent to which introducing such testimony would disrupt the trial; and (4) the moving party's bad faith or wilfulness." *Woodworker's Supply, Inc. v. Principal Mut. Life Ins. Co.*, 170 F.3d 985, 993 (10th Cir. 1999).

### Dr. Gann

Dr. Gann's report is a generic report that he provided in the MDL proceedings in March 2011. The main thrust of Dr. Gann's report is that hormone therapy causes breast cancer. (Doc. 59-5 at 2.) He does not mention plaintiff by name or otherwise refer to any opinion given by defense experts in this case. But the lack of direct tie to this case does not, in itself, require the court to strike the report. *See Biomet Orthopedics, Inc. v. Tact. Med. Instruments, Inc.*, No. 3:01CV895PS, 2004 WL 5499504, at *2 (N.D. Ind. Apr. 7, 2004) (refusing to strike rebuttal expert on grounds that rebuttal expert had not specifically referred to any of opposing party's experts).

Plaintiff contends that Dr. Gann's report responds to opinions propounded by defense experts Dr. Lisa Bailey—a breast surgeon—and Dr. Chad A. Livasy—a pathologist. Dr. Bailey states, "In my opinion, [plaintiff's] HT [(hormone therapy)] use is not a risk factor. In my opinion, there is no compelling evidence indicating that HT is a risk factor for in situ disease or benign proliferative lesions, or that HT use causes these legions to develop into invasive cancer." (Doc. 59-3 at 2.) Dr. Livasy opines: "Together, the data do not provide sufficient evidence of an association between [hormone therapy drugs and DCIS]. . . . There is no evidence—based on the pathology or any other test or material—to conclude that the HT simulated the growth of [plaintiff's] DCIS." (Doc. 59-2 at 3, 6.) Dr. Gann's conclusion mirrors that of three other experts timely disclosed by plaintiff: Dr. Michael D. Wertheimer (who has indicated that he is no longer interested in participating in this case), Dr. Donald Austin, and Dr. Graham Colditz.

The court believes that Dr. Gann is not truly functioning as a rebuttal expert.  Rather, plaintiff took the opportunity to add him to her expert list after he submitted his new report in the MDL proceedings.  His disclosure is therefore untimely.  The court will only allow him to testify if the untimely disclosure is substantially justified or harmless.

The court therefore turns to the four *Woodworker's* factors.  Defendants would unquestionably suffer prejudice by allowing plaintiff to name Dr. Gann at this stage of the litigation.  The deadline for disclosing experts passed nearly eight months ago.  Although the trial in this case is still several months away, and presumably the parties would have ample time to prepare, defendants would suffer prejudice by being forced to depose an additional expert.  Likely, they would seek leave to file additional motions and designate additional experts of their own.  It is possible that allowing plaintiff to designate Dr. Gann will delay trial, although it technically would not *disrupt* trial.  This case has been pending since 2004 (in MDL proceedings until 2010), and the court does not see value in delaying it further and running up additional unnecessary expenses—particularly when it appears that Dr. Gann's testimony would be cumulative to the testimony of three other experts.

The court recognizes that any prejudice defendants suffer may be curable.  But, in this instance, the court still does not believe that late designation is appropriate.  The court does not find that plaintiff acted in bad faith or in a wilful manner.  But the court does believe that plaintiff saw an opportunity to designate a case-in-chief expert as a rebuttal witness by making a weak tie to the report of defendants' experts.  To allow plaintiff to present Dr. Gann's testimony in this manner subverts the expert disclosure process.  The *Woodworker's* factors weigh against allowing plaintiff to untimely disclose Dr. Gann.

### Dr. Patten

Dr. Patten opines that plaintiff's use of hormonal therapy drugs contributed to a slow-down in the naturally-occurring decrease of breast density. (Doc. 59-6 at 7, 11.) This opinion arguably responds to an opinion by defendants' expert Dr. Marc F. Inciardi—a radiologist—that he saw "no evidence" that the hormonal therapy drugs were "responsible for increasing or maintaining the level of density in her breasts." (Doc. 57-8 at 7.) Dr. Inciardi states that between 1993 and 2002 (when plaintiff was taking hormone therapy), plaintiff's breast density declined one BI-RADS category. (*Id.*) Dr. Inciardi briefly discusses breast density in response to Dr. Wertherimer's opinion that hormone therapy increases or maintains breast density after menopause—when, ordinarily, breast density decreases after menopause.

Dr. Patten also states that there was no evidence of plaintiff's breast cancer until November 2002. (Doc. 59-6 at 10.) This finding is arguably in response to Dr. Inciardi's opinion that plaintiff's breast cancer was "more likely than not" present before she began hormonal therapy drugs in 1992. (Doc. 57-8 at 7.) Dr. Patten, however, did not review the same information that Dr. Inciardi reviewed in reaching this opinion. Dr. Inciardi reviewed an actual mammogram from 1993. Dr. Patten initially reviewed only the report from that mammogram. Although defendants argue that this difference precludes Dr. Patten's opinion from qualifying as true "rebuttal," the court believes that the difference goes more to the weight of the evidence than the admissibility.

The bulk of Dr. Patten's report centers on his opinion that breast density is a risk factor for developing breast cancer, and that hormone therapy increases breast density, creating a corollary increased risk for developing breast cancer. But Dr. Inciardi opined neither that (1) density is not a factor for breast cancer or (2) hormone therapy does not affect density. This portion of Dr. Patten's report goes well beyond the scope of Dr. Inciardi's.

Dr. Patten's report more closely resembles proper rebuttal than Dr. Gann's report. But the court remains skeptical of whether Dr. Patten is a proper rebuttal witness on most of the issues he addresses. Dr. Patten's opinion on breast density constituting a risk factor for developing breast cancer may come close to embodying a new legal theory, although it appears from defendants' experts' reports that Dr. Wertheimer also espoused that theory. (*See, e.g.*, Doc. 59-3 at 4.) The court is not prepared, however, to make this determination on the record or the arguments before it. In any event, the court has now allowed plaintiff to substitute another expert for Dr. Wertheimer.

After much consideration, the court determines that Dr. Patten is a proper rebuttal witness at least on a limited topic: whether plaintiff's DCIS was present prior to beginning hormonal therapy drugs. At a minimum, the court will permit him to testify as a rebuttal expert on that issue. The court cannot determine at this time the full scope that it will allow Dr. Patten to testify, but the scope may ultimately be limited based on a properly-supported and well-founded motion in limine.

### Plaintiff's Motion to Exclude General Causation Testimony of Defense Experts (Doc. 94)

Plaintiff next asks the court to preclude defendants from offering evidence that estrogen and progestin hormone therapy does not cause breast cancer or hormone dependent DCIS generally. Plaintiff contends that defendants' experts do not employ a reliable methodology for reaching their conclusions.

The fact that plaintiff disagrees with defendants' experts does not render their opinions unreliable or "junk science." The court will not exclude the general causation testimony of defendants' experts based on *Daubert* standards. Plaintiff's motion is denied.

### Defendants' Motion for Summary Judgment Regarding Proximate Causation (Doc. 105)

Finally, defendants seek summary judgment because plaintiff's prescribing physician, Dr. Mark Curry, testified in deposition that (1) he knew of the breast cancer risk associated with ingesting hormones; (2) his understanding of the risk today is "pretty comparable" to his understanding at the time he prescribed the hormones to plaintiff; (3) he continues to prescribe hormone therapy; and (4) he continues to believe that his actions were appropriate. Under the learned intermediary doctrine, defendants contend, plaintiff cannot establish proximate causation so long as Dr. Curry was aware of the risk and would not have changed his decision to prescribe based on a different product warning.

Although Dr. Curry testified that he knew the risks associated with prescribing hormone therapy and that he believes that his actions were appropriate with regard to plaintiff, he also testified that he now conducts different risk-benefit discussions with his patients and that he has become more conservative in his approach to estrogen and progesterone. He acknowledged that it would not surprise him if data showed a significant dip in the prescriptions that he wrote for hormone therapy medications after results from the Women's Health Initiative were published in 2002.

Based on this evidence, the court concludes that a genuine issue of material fact exists as to whether plaintiff can prove proximate causation. The court denies defendants' motion.

**IT IS THEREFORE ORDERED** that Defendants' Motion to Strike Plaintiff's Late Expert Designation of Drs. Randall Patten and Peter Gann (Doc. 56) is granted in part and denied in part. The court strikes the designation of Dr. Gann, but will allow Dr. Patten to testify as a rebuttal expert. Dr. Patten's testimony may ultimately be limited at trial, but the court cannot make that determination on the record before it.

**IT IS FURTHER ORDERED** that Plaintiff's Motion to Exclude General Causation Testimony of Defense Experts (Doc. 94) is denied.

**IT IS FURTHER ORDERED** that Defendants' Motion for Summary Judgment Regarding Proximate Causation (Doc. 105) is denied.

Dated this 14th day of October, 2011, at Kansas City, Kansas.

                                                s/ Carlos Murguia
                                                **CARLOS MURGUIA**
                                                **United States District Judge**